IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Teresa Lee, *as Personal Representative of the Estate of Kewayne Lee*, <br><br> Plaintiff, <br><br> vs. <br><br> South Carolina Department of Corrections; Warden Willie Eagleton, *individually and/or in his official capacity as warden of Evans Correctional Institution*; Associate Warden Annie Sellers, *individually and/or in her official capacity as associate warden of Evans Correctional Institution*, <br><br> Defendants. | Case No.: 0:19-cv-02237-JD <br><br><br><br> **OPINION & ORDER** |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("Report and Recommendation" or "Report") recommending that the Court grant in part and deny in part defendants South Carolina Department of Corrections ("SCDC"), Warden Willie Eagleton ("Eagleton"), Associate Warden Annie Sellers ("Sellers"), and Correctional Officer Major Charles West's ("West") (collectively, "Defendants") motion for summary judgment. (DE 50.) In addition, Plaintiff has filed a Motion to Seal a document cited in his response brief to Defendants' Motion. (DE 39.) For the reasons set forth below, the Court adopts the Report and Recommendation and grants in part and denies in part the Defendants' motion and denies the Plaintiff's Motion to Seal.

**BACKGROUND**

Kewayne Lee ("Plaintiff") was an inmate incarcerated at Evans Correctional Institution ("Evans") in Marlboro County, South Carolina. Lee was discharged from SCDC and he is now

1

deceased.[2]  Plaintiff brings this suit alleging inmate-on-inmate attacks at Evans.  Plaintiff alleges that on June 15, 2016, while he was "on his assigned unit, Waxsaw B," he was "stabbed approximately five (5) times in the back by a known gang member." (DE 2, p. 17-18.)  According to Plaintiff, "Correctional Officer Davis was assigned to Plaintiff Lee's wing on that date" along with Davis's "trainee," Ronnie Evans.  (DE 50, p. 2.)  Plaintiff alleges that at the time of his attack, Davis "had left the unit and left the trainee on the wing in violation of Defendant SCDC's policies and procedures."  (DE 50, p. 2.)  Plaintiff alleges that when he was attacked, Ronnie Evans "ran off the unit" and "held the door and wouldn't let [Plaintiff] off the unit" when Plaintiff "attempted to also run off the wing to get away from his attacker."  (DE 50, p. 2-3.)  According to Plaintiff, "Correctional Officer Captain Ford came up behind the trainee and reached over him and opened the door so that Plaintiff Lee could get off the wing."  (DE 50, p. 3.)

Plaintiff alleges he was taken to Cheraw Health Center and "treated for his stab wounds, one of which caused his lung to collapse."  (DE 50, p. 3.)  Plaintiff alleges he was hospitalized for four days "and was told by the doctor that he would not be in general population for at least 10 days because of the risk of collapsing the lung again if hit wrong."  (DE 50, p. 3.)  Plaintiff alleges he was "immediately returned to the general population upon his return to the institution."  (DE 50, p. 3.)  Plaintiff alleges he "signed papers for the warden requesting" he be transferred to another institution "because he feared for his life."  (DE 50, p. 3.)  Plaintiff alleges he was not transferred and two months later "the inmate who stabbed him was placed in the same unit and side as Plaintiff Lee in violation of SCDC's policies and procedures." (DE 50, p. 3.)  According to Plaintiff, he has "received little or no follow up medical treatment for his injuries after his return

---

[2] On June 12, 2020, United States Magistrate Judge Mary Gordon Baker issued an Order authorizing the Plaintiff to substitute Teressa Lee, Personal Representative of the Estate of Kewayne Lee, as a named party in place of Kewayne Lee, pursuant to Fed.R.Civ.P. 25(a)(1).

2

to the institution from the hospital." (DE 50, p. 3.) Plaintiff alleges he was "prescribed pain medication due to the seriousness of his injuries but was never given any pain medication by medical." (DE 50, p. 3.) According to Plaintiff, "Evans Correctional Institution has a long history of violence among inmates housed in the institution." (DE 50, p. 3.) Plaintiff alleges that at Evans, "gangs are basically allowed to run free and commit whatever crimes they want within the institution without fear of punishment and no actions were taken to prevent the violent acts." (DE 50, p. 3.) Plaintiff alleges that Defendants have failed "to keep weapons out of the hands of inmates housed at Evans Correctional Institution." (DE 50, p. 3.) Plaintiff further alleges that "in many instances, correctional officers who violate [SCDC] Policies and Procedures are not disciplined for the violation." (DE 50, p. 3.)

Plaintiff alleges four causes of action. Plaintiff's first cause of action is for temporary and permanent injunctive relief pursuant to S.C. Code Ann. § 15-45-30, Rule 65(b) of the South Carolina Rules of Civil Procedure, and 42 U.S.C. Section 1983, with no reference to a particular Defendant. (DE 2.) Plaintiff's second cause of action is "Violation of Civil Rights and 42 USC Section 1983; General Allegations against Defendant Warden Eagleton, Defendant Associate Warden Sellers, and Defendant Major Charles West" for inter alia, "allowing uncontrolled violence in the correctional institution"; "failing to provide protection and security for the Plaintiff"; and "allowing inmate [sic] to have dangerous weapons." (DE 2.) Next, Plaintiff alleges "Violation of Civil Rights and 42 USC Section 1983; Failure to Implement Appropriate Policies, Customs, and Practices against Defendant Warden Eagleton and Defendant Associate Warden Sellers" for "failing to prevent inmates from obtaining and possessing dangerous weapons" and failing to "adequately train and supervise its employees." (DE 2.) Lastly, Plaintiff alleges "Violation of Tort Claims Act of South Carolina, S.C. Code Section 15-78-10, et. seq.; General

3

Allegations against Defendant SCDC" for the acts of its employees who "acted in a negligent, grossly negligent, reckless, willful and wanton manner in causing injury to the Plaintiff[]" (DE 50, p. 4.)

The Report recommends that summary judgment should be denied as to Plaintiff's § 1983 Eighth Amendment claims brought against Defendants Eagleton and Sellers and his state law claims for negligence and gross negligence against SCDC. The Report also recommended that the remainder of Plaintiff's claims should be dismissed with prejudice and West should be dismissed from this action. Additionally, the Report recommends denying Plaintiff's Motion to Seal. (DE 50.) The Defendants have filed an Objection to the Report and Recommendation raising the following objections: 1) Lee is deceased and has submitted no affidavits to establish any facts in dispute, 2) the Report fails to properly analyze Eagleton and Sellers deliberate indifference and Lee has not submitted any evidence to refute steps Defendants took to counteract risk of harm or demonstrate those steps were unreasonable, 3) the Report erred in finding Eagleton and Sellers were not entitled to qualified immunity, 4) the Report erroneously relies upon the Aiken report, and 5) the Plaintiff's tort claims should be dismissed. (DE 55.)

## LEGAL STANDARD

### A. Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a

specific objection is made. Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

## DISCUSSION

The Court has conducted a de novo review of the record on summary judgment in response to the Defendants' objections to the Report and Recommendation and finds that the Report comprehensively addresses the issues on summary judgment and correctly determines that the Defendants' motion should be granted in part and denied in part. The Court address the objection raised by the Defendants *seriatim*.

### A. First Objection – No affidavits to establish a genuine issue of fact

Defendants contend that Lee has not submitted any affidavits or otherwise admissible testimony, and therefore, the Report erred in accepting unsworn allegations in the complaint as true. (DE 55, p. 4.) As a threshold matter, the Report acknowledged that the Complaint was not signed by the Plaintiff and he could not rely on it alone to defeat summary judgment. (DE 50, p.

5, n. 5.) However, the record shows that Plaintiff offered in opposition to Defendants' motion for summary judgment an affidavit, SCDC medical records, SCDC MINs records, the testimony from Defendants Eagleton and Sellers (which raises an inference that they were aware of the issues, or should have been aware, and failed to act), and the expert opinion of James E. Aiken who opined on the assault which took place and the failures by Defendants which facilitated the assault. (DE 38.) The record, when construed in a light most favorable to Plaintiff, reflects remaining disputes of material fact relevant to Plaintiff's injuries warranting denial of summary judgment.

### B. Second Objection – No evidence disputing Eagleton and Sellers' lack of deliberate indifference

#### 1. Burden of Proof

Defendants argue that the Report and Recommendation fails to recognize that the Plaintiff "carries the burden of proof to demonstrate that Eagleton and Sellers had reasonable options to address any factors that presented an unconstitutional risk to Lee, that these options were reasonably available to Eagleton and Sellers, that they consciously failed to exercise these options, and that Lee would not have been injured but for Eagleton and Sellers failure to implement these reasonable and reasonably available options." (DE 55, p. 5.) Defendants' objection fails to cite any authority for this proposition at summary judgment. Therefore, the Court treats this objection as nonspecific.[3] As to Defendants fact dispute objections on summary judgment, the Report and Recommendation comprehensively sets forth the law and facts of this case. In summary, the Eighth Amendment requires prison officials to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Officials must take "reasonable

---

[3] Defendants' objections in II.b.1, 2, 3, 4, 6, and 7 postulates a burden on the Plaintiff at summary judgment to demonstrate what the Defendants should have done or could have done to better protect the Plaintiff, to survive summary judgment. Since the Defendants offer no legal authority for this standard the Court overrules this objection.

7

measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). In other words, "[t]he government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833. Nonetheless, "[t]he burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." Pyles v. Fahim, 771 F.3d 403, 408-09 (7th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 325 (1986)). A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Farmer, 511 U.S. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (observing that "deliberate indifference" requires actual knowledge and disregard of a substantial risk of serious injury).

A prison official's subjective actual knowledge can be proven through circumstantial evidence, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Farmer, 511 U.S. at 842. The Fourth Circuit Court of Appeals recently reiterated that the subjective knowledge component is nuanced. See Makdessi v. Fields, 789 F.3d 126, 137–38 (4th Cir. 2015) (finding that the district court failed to appreciate nuances with respect to this component).

The Fourth Circuit acknowledged that the "'actual knowledge' standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence." Id. at 129. "Prison officials may not simply bury their heads in the sand and thereby skirt liability." Id. "Rather, they may be held accountable when a risk is so obvious that it had to have been known." Id. Therefore, "even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Id.

8

at 133; see also Porter v. Clarke, 923 F.3d 348, 361 (4th Cir. 2019), as amended (May 6, 2019) ("[A]n obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." (quoting Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011)).

Presumably, Defendants believe that they are entitled to summary judgment because the Report erred in recommending as a matter of law they were responding reasonably to the risk of harm to inmates at Evans. Defendants advance this claim because "[n]o factual evidence, and no expert testimony supports this position." (DE 55, p. 6.) In reviewing the record, the Court agrees with the Report and Recommendation's finding that the Plaintiff has sufficiently refuted these arguments (in a light most favorable to Plaintiff), citing the 2016 MIN entries, SCDC Policy OP-22.25, the Roth Report, Mr. Aiken's expert report, and the deposition testimony of Eagleton and Sellers as evidence supporting Plaintiff's constitutional claims. (DE 50, p. 25.)

## 2. Deliberate indifference analysis

Defendants concede that the Report and Recommendation correctly points out that "there is no direct evidence of actual knowledge in the record - Plaintiff does not allege that he personally complained to Defendants Eagleton, Sellers, or West about a risk of being assaulted prior to the July 15, 2016 incident." (DE 50, p. 25.) However, Defendants object to the Report's reliance on the Eagleton and Sellers' subjective actual knowledge required to support a § 1983 failure to protect claim. (DE 55, p. 7.) As stated herein, the Fourth Circuit acknowledged that the "'actual knowledge' standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence." Makdessi v. Fields, 789 F.3d 126, 129 (4th Cir. 2015). "Prison officials may not simply bury their heads in the sand and thereby

9

skirt liability." Id. "Rather, they may be held accountable when a risk is so obvious that it had to have been known." Id.

Plaintiff asserts that the Roth Report documents that 57 assaults occurred at Evans in 2015 and 2016, 32 of which were inmate-on-inmate assaults. (DE 38, ¶ 13.) According to Plaintiff, the deposition testimony of Eagleton and Sellers indicates that they would have been aware of these incidents of assault. (DE 38, ¶ 13.)Plaintiff further contends that per the requirements of SCDC Policy OP-25.25, Eagleton and Sellers would have known the "number of inmate-on-inmate assaults or the amount of contraband weapons seized in one particular month" given their positions as Warden and Associate Warden. (DE 38, ¶ 14.) Construed in the light most favorable to Plaintiff, the Roth Report indicates a substantial risk of serious harm to inmates at Evans was longstanding, pervasive, and well-documented prior to Plaintiff's assault. (DE 50, p. 26.)

Further, based on the deposition testimony of Eagleton and Sellers, the 2016 MIN entries, and SCDC Policy OP-22.25, it appears Eagleton and Sellers were kept apprised the incidents of assault and contraband at Evans. Specifically, Eagleton testified that he would typically receive incident reports involving assaults at Evans. (DE 38-2, p. 4.) Sellers similarly testified that if an inmate was injured by another inmate, the person on duty would report the incident to police services "after they make a call to the associate warden or the warden." (DE 38-4, p. 1.) Sellers further testified that if an inmate stabbing occurred and required medical attention, she would likely see a report on that incident. (DE 38-5, p. 2.) The 2016 MIN entries submitted by Plaintiff document, *inter alia*, numerous instances of assault with weapons at Evans as well as the confiscation of contraband weapons over a six-month period in 2016. (DE 38-6.) Per SCDC Policy OP-22.25, the wardens are "responsible for reporting monthly statistical data regarding the institution by submitting SCDC Form 19-36, 'Monthly Management Information Report.'" (DE

53.) Thus, it appears Eagleton and Sellers would have been aware of the incidents documented in the MIN entries through their duties in reporting "monthly statistical data regarding" Evans. (DE 50, p. 26-27.)

Nevertheless, Defendants object, arguing "the R&R ignored the fact that (1) Lee did not submit any evidence to refute Defendants' evidence that they were taking corrective actions and not ignoring the risk of harm and (2) Lee did not submit any evidence to show the actions Defendants took were unreasonable." (DE 55, p. 10-11, 13.); see also n. 3 (rejecting a duty of the Plaintiff to show actions were unreasonable). On the other hand, Defendants point to certain language in the Roth Report to argue that SCDC was taking appropriate corrective action. (DE 50, p. 30.) First, the Report and Recommendation correctly sets forth the standard of review citing Farmer, where the Supreme Court held that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded *reasonably* to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety.'" 511 U.S. at 844 (emphasis added).

However, the Report notes that "[w]hile certain language in the Roth Report, as highlighted by Defendants, indicates efforts were being taken to address the security issues facing SCDC inmates, a question of fact remains as to whether those efforts constitute reasonable responses to the specific risks facing inmates at Evans prior to July 15, 2016." (DE 50, p. 31.) This Court agrees with the Report and Recommendation's conclusion that "[s]uch evidence precludes the undersigned from the finding that Defendants Eagleton and Sellers were, as a matter of law, responding reasonably to the risk of harm to inmates Evans prior to the July 15, 2016 assault at issue." (DE 50, p. 31.) In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'"

11

Crawford v. Newport News Indus. Corp., No. 4:14-cv-130, 2018 WL 4561671, at *2. (E.D. Va. Mar. 2, 2018), adopted in part, 2018 WL 2943445 (E.D. Va. June 11, 2018), appeal dismissed sub nom. Kershaw v. Newport News Indus. Corp., 2018 WL 8058614 (4th Cir. Oct. 25, 2018).

Therefore, the Court adopts the Report and Recommendation finding that the evidence in the record supports a question of fact as to whether Defendants Eagleton and Sellers had the subjective actual knowledge required to support a § 1983 failure to protect claim. From these Defendants' knowledge of the incidents of assault, confiscated contraband weapons, and staffing shortages prior to July 15, 2016, a reasonable juror could find that Eagleton and Sellers "knew of a substantial risk from the very fact that the risk was obvious" prior to assault.

### C. Third Objection - Eagleton and Sellers qualified immunity

Defendants contend that the Report and Recommendation did not appropriately address the second prong of the qualified immunity analysis - whether it would have been clear to an objectively reasonable prison official that his actions violated Lee's constitutional rights. (DE 55, p. 21.) Defendants argue that "[a]n objectively reasonable prison official looking at the clearly established law at the time of the incident would believe he was free of liability in the instant case because he took steps to combat the risk of harm caused by under staffing and security-related issues, such as trying to counteract staffing shortages and conduct contraband sweeps." (DE 55, p. 21.) However, the Report found that "[q]uestions of fact exist with regards to whether Eagleton and Sellers violated Plaintiff's clearly established rights as discussed above, and therefore, the undersigned cannot determine at this time whether their actions were objectively reasonable." (DE 50, p. 35-36.)

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights

within the knowledge of a reasonable person." Meyers v. Baltimore County, 713 F.3d 723, 731 (4th Cir. 2013). "Not all constitutional violations are violations of clearly established ... constitutional rights, so a plaintiff may prove that an official has violated his rights, but an official may still be entitled to qualified immunity." Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 907 (4th Cir. 2016) (citing Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (internal citations and quotations omitted)). Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts presented, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 230-33 (2009).

Defendants' assertions regarding the reasonableness of their conduct is exactly what is at issues here. The objective reasonableness of the Defendants conduct taken in the light most favorable to the Plaintiff supports denial of summary judgment. To that end, the Report correctly recommended denying summary judgment on qualified immunity, citing Kane v. Beaufort Cnty. Sheriffs Dep't, No. 9:14-cv508-RMG, 2015 WL 404570, at *5 (D.S.C. Jan. 29, 2015) ("summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants" (quoting Vathekan v. Prince George's Cnty., 154 F.3d 173, 180 (4th Cir. 1998)). (DE 50, pp. 35-36.)

### D. Fourth Objection – Reliance upon the Aiken report

Defendants assert that the Report and Recommendation improperly relied on the conclusory reasoning of James Aiken. Plaintiff submitted an expert report drafted by his expert

13

James Aiken, a former Warden, Deputy Warden, and Deputy Regional Administrator in South Carolina. Mr. Aiken has over 47 years of experience "in correctional administration, facility operations/management, [and] inspection/assessment of facility performance." (DE 50, p. 23.) His career has focused in part on "the assessment and restoration of facilities and systems that have experienced chronic and acute security, operational critical events and management shortfalls." (DE 50, p. 23.) It appears Defendants' challenge Aiken's conclusions without raising a specific objection, except a reference to Rule 702 Fed R Civ P. While this issue may be relevant at trial, it fails to address the heart of the issue before the Court. Thus, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in his favor, the Report correctly concludes that Mr. Aiken's report creates an issue of material fact in dispute; and therefore, Summary Judgment is improper.

### E.  Fifth Objection – Lee's tort claims should be dismissed

Defendants contend that "SCDC cannot be liable for the failure to exercise even slight care where, as here, Lee utterly fails to offer even slight care factual response that were available." (DE 55, p. 24.) The SCTCA provides that "a governmental entity is not liable for a loss resulting from responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any . . . prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15–78–60(25) (2005) (emphasis added). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. It is the failure to exercise slight care." Jinks v. Richland Cnty., 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003) (internal citation omitted). "The term is relative and means the absence of care that is necessary under the circumstances." Moore by Moore v. Berkeley Cnty. Sch. Dist., 326

S.C. 584, 591, 486 S.E.2d 9, 13 (Ct. App. 1997). Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports *only one reasonable inference*. Bass v. S.C. Dep't of Soc. Servs., 414 S.C. 558, 571, 780 S.E.2d 252, 259 (2015) (emphasis added). Defendants rely on the Roth Report and the Plaintiff's failure to offer a slight care factual response that was available. But, as the Report and Recommendation notes, the record contains (*inter alia* the Roth Report) genuine issue of material fact as to whether Eagleton and Sellers exercised "slight care" to address the risk of harm to inmates at Evans. Therefore, there is more than one reasonable inference that can be drawn from the record.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary Judgment (DE. 37) be granted in part and denied in part. Specifically, summary judgment is denied as to Plaintiff's § 1983 Eighth Amendment claims brought against Defendants Eagleton and Sellers and Plaintiff's state law claims for negligence and gross negligence against SCDC. The remainder of Plaintiff's claims are dismissed with prejudice, and West is dismissed from this action. Additionally, the Court denies Plaintiff's Motion to Seal (DE 39) and ORDERS Plaintiff to file the unredacted version of SCDC Policy OP-22.25.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
March 31, 2021